IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAJESTIC ATHLETIC, LTD., a Pennsylvania corporation, | ) ) ) ) | CIVIL ACTION |
| Plaintiff, | ) ) ) | No. 02-CU-3216 |
| v. | ) ) | |
| REEBOK INTERNATIONAL LTD., a Massachusetts corporation, and PAUL FIREMAN, a Massachusetts citizen, individually and in his capacity as Chairman, CEO and President of Reebok International Ltd., | ) ) ) ) ) ) ) | JURY TRIAL DEMANDED<br><br>FILED MAY 24 2002 |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Majestic Athletic, Ltd. ("Majestic"), complains against Defendant, Reebok International Ltd. ("Reebok") and Paul Fireman ("Mr. Fireman") as follows:

### Parties

1. Majestic is a Pennsylvania corporation with a principal place of business at 100 Majestic Way, Bangor, Pennsylvania 18013. Majestic is involved in the business of manufacturing and marketing sports licensed apparel and athletic team uniforms.

2. Reebok is a Massachusetts corporation with a principal place of business at 1895 J.W. Foster Boulevard, Canton, Massachusetts 02021. Reebok is involved in the business of manufacturing and marketing sports licensed apparel, footwear and athletic team uniforms.

3. Mr. Fireman is an adult individual who is domiciled in or around Boston Massachusetts, and therefore is a citizen of the Commonwealth of Massachusetts. At all times

material and relevant hereto, Mr. Fireman was the Chairman, Chief Executive Officer and President of Reebok.

## Jurisdiction and Venue

4.  The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

5.  This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §1332 in that there is complete diversity of citizenship between the parties.

6.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) and (c).

## Nature of the Case

7.  Majestic and Reebok are competitors in the sports licensed and athletic team uniform business. Reebok desired to obtain the valuable licenses that Majestic has with Major League Baseball. Reebok, in addition, intended to put Majestic out of business, and stated its intention to do so. Reebok then embarked upon a course of conduct which included engaging in sham negotiations with Majestic, as a result of which the consummation of a deal between Majestic and Major League Baseball for new licenses and the extension of existing licenses was stalled and pursuant to which Reebok obtained confidential information from Majestic. When this tactic failed to produce Reebok's desired results, Reebok defamed and disparaged Majestic by accusing Majestic of engaging in bribery.

## Factual Background

8.  For the past 26 years, Majestic has manufactured and marketed sports apparel and team uniforms. For the past 20 years, Majestic has manufactured and marketed sports apparel and team uniforms for a number of Major League Baseball teams pursuant to both exclusive and non-exclusive licenses from Major League Baseball Properties ("MLBP").

9. Prior to January, 2002, Majestic had been negotiating with MLBP for a long-term extension of its existing licenses, as well as for long-term licenses for the right to manufacture and market the apparel and authentic team uniforms of an additional eight Major League Baseball teams.

10. Prior to January, 2002, Reebok had been soliciting MLBP to acquire licenses to manufacture and market Major League Baseball apparel and team uniforms, including the licenses held by Majestic.

11. In discussions between Reebok and MLBP on or before January, 2002, MLBP advised Reebok that MLBP was pleased with its long-standing business relationship with Majestic and that it intended to continue that relationship in the future.

12. MLBP also advised Reebok that if it was interested in manufacturing and marketing Major League Baseball apparel and team uniforms, Reebok might wish to consider a business relationship with Majestic, including the acquisition of Majestic.

13. In January 2002, Reebok initiated discussions with Majestic regarding a business relationship with, or acquisition of, Majestic.

14. Shortly after the parties commenced the discussions, Reebok requested certain confidential and proprietary information from Majestic, including financial data and sales forecasts. It was represented to Majestic that such confidential and proprietary information was needed to conduct due diligence, or to otherwise further the discussions regarding a business relationship between Majestic and Reebok or an acquisition of Majestic by Reebok.

15. Majestic entered into these discussions with Reebok and provided confidential information to Reebok based upon Reebok's representations that led Majestic to believe that Reebok was serious and sincere about the discussions and was acting in good faith.

16. In reliance upon Reebok's representations, Majestic in good faith agreed to provide such information upon the execution of a confidentiality agreement.

17. On or about January 30, 2002, Reebok and Majestic executed a Mutual Confidentiality Agreement wherein Reebok agreed, inter alia, not to, "(1) use, (2) disclose, (3) copy or (4) allow access to Confidential Information of the other party without the prior written consent of the other party."

18. On or about February 25, 2002, Majestic provided certain requested confidential and proprietary information to Reebok to further the ongoing dialogue regarding the formation of a business relationship between Majestic and Reebok or the acquisition of Majestic by Reebok.

19. In reliance upon Reebok's representations that such information was needed to conduct due diligence or otherwise further the discussions between the parties, Majestic also verbally conveyed additional confidential and proprietary information to Reebok, including information relating to Majestic's operations and business strategies.

20. Simultaneous with the discussions with Reebok, Majestic continued its negotiations with MLBP regarding the long-term extension of its existing licenses and the additional long-term licenses for the right to market the apparel and authentic team uniforms for an additional eight Major League Baseball teams. At all times material and relevant hereto, Reebok was aware of such negotiations.

21. On or about March, 2002, Reebok specifically advised Majestic that it was not interested in receiving a target acquisition price from Majestic. In addition, despite repeated requests from Majestic to do so, Reebok never made a proposal to enter into a business relationship with, or to acquire, Majestic.

22.     Upon information and belief, Reebok never intended to enter into any business relationship with Majestic or to acquire Majestic. To the contrary, the discussions were a sham, devised by Reebok to stall Majestic's negotiations with MLBP for the long-term extension of its existing licenses and additional long term licenses for the additional eight teams, and to improperly acquire and use Majestic's confidential and proprietary information to unfairly compete against Majestic for the MLBP licenses.

23.     On or about March 20, 2002, Majestic advised Howard Smith ("Mr. Smith"), Vice President of Licensing for MLBP, that Majestic and Reebok were not close to consummating a business relationship or acquisition, but that Majestic intended to continue such discussions with Reebok.

24.     During the March 20, 2002 discussion with Mr. Smith, Majestic also inquired about the status of Majestic's long-term license extensions and the long-term licenses for the eight additional teams. Mr. Smith advised Majestic that MLBP intended to offer such licenses to Majestic and that he would be discussing the matter with Tim Brosnan ("Mr. Brosnan"), Executive Vice President of Business for MLBP, to obtain the approval to do so.

25.     On or about March 21, 2002, Mr. Smith advised Majestic that he had obtained approval from Mr. Brosnan to proceed with the long-term license extensions and the long-term licenses for the eight additional teams and that a deal sheet would be forwarded to Majestic as soon as Steve Armus, Licensing Director for MLBP, returned from vacation. Mr. Smith also confirmed in the March 21, 2002 conversation that the license extensions and the licenses for the additional eight teams would be on a "long-term" basis.

26. On the morning of April 2, 2002, Mr. Smith advised Majestic that the deal sheet regarding the license extensions and the licenses for the eight additional teams would be prepared "in the next few days."

27. On that same day, Mr. Smith contacted Mr. Fireman and advised him that MLBP was going to continue its longstanding relationship with Majestic, and that Majestic would be awarded the long-term license extensions and the long-term licenses for the eight additional teams. Mr. Fireman indicated that he was not pleased with MLBP's decision and the conversation was terminated. If Reebok was serious about an acquisition of Majestic, Mr. Fireman logically would have been pleased with the decision because of Majestic's increased sales that Reebok would enjoy as a result of a business relationship with, or its acquisition of, Majestic.

28. On that same date, Mr. Fireman subsequently telephoned Mr. Smith and knowingly, falsely and maliciously accused Mr. Smith of accepting bribe payments from Majestic in exchange for the long-term license extensions and the long-term licenses for the additional eight teams. Mr. Fireman also made other threats.

29. Mr. Fireman made the foregoing statements with full knowledge of their falsity, with the specific intent to cause harm to Majestic's business reputation, to cause harm to Majestic's business relationship with MLBP and to improperly and maliciously interfere with MLBP's award of the long-term license extensions and the long-term licenses for the eight additional teams to Majestic.

30. The foregoing statements were made by Mr. Fireman without justification and/or privilege and with actual malice.

31.  Mr. Fireman repeated the false and defamatory comments regarding Majestic to Mr. Brosnan; these statements have been repeated to other individuals involved in the sports licensing business, as well as to members of the community in general.

32.  Mr. Fireman's false and defamatory statements have been disseminated throughout the sports licensing industry and have caused substantial damage and injury to the good name and business reputation of Majestic.

33.  As the direct and proximate result of Mr. Fireman's false and defamatory statements regarding Majestic, MLBP has not issued the documentation of the long-term extensions of Majestic's existing licenses and the long-term licenses for the eight additional teams.

34.  The foregoing activities of Reebok are consistent with its intention to acquire the valuable licenses with MLBP held by Majestic, to cause harm to Majestic's business and business reputation and in furtherance of its plan, as articulated through express statements made to insiders in the industry, that it intends to put Majestic out of business.

**Count I**

**Defamation**
**Majestic Athletic, Ltd. v. Reebok International Ltd. and**
**Paul Fireman, individually and in his capacity as Chairman,**
<u>**Chief Executive Officer and President of Reebok International Ltd.**</u>

35.  The allegations set forth in paragraphs 1 through 34 of Plaintiff's Complaint are incorporated herein by reference as though set forth at length.

36.  At the time Mr. Fireman made the false and defamatory statements referenced in paragraphs 27 through 31 above, he was acting within the scope of his employment as Chairman, Chief Executive Officer and President of Reebok and in furtherance of Reebok's business, and in his own behalf.

-7-

37. Mr. Fireman's statements regarding Majestic were false and defamatory. Mr. Fireman knew that the statements were false, or had reckless disregard as to the truth of the statements, and uttered the statements for the purpose of depriving Majestic of its good name and reputation and to improperly interfere with Majestic's business relationship with MLBP.

38. As a direct and proximate result of the false and defamatory statements of Mr. Fireman, Majestic has been damaged and injured in its good name and business reputation.

39. As a direct and proximate result of Mr. Fireman's false and defamatory statements, MLBP has not issued the documentation of the long-term extensions of Majestic's current licenses and the long-term licenses for the eight additional teams.

40. The revenue, profits and business reputation of Majestic have suffered as a direct and proximate result of Mr. Fireman's false and defamatory statements.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment as set forth below.

### Count II

### Commercial Disparagement
### Majestic Athletic, Ltd. v. Reebok International Ltd. and
### Paul Fireman, individually and in his capacity as Chairman,
### Chief Executive Officer and President of Reebok International Ltd.

41. The allegations set forth in paragraphs 1 through 40 of Plaintiff's Complaint are incorporated herein by reference as though set forth at length.

42. At the time Mr. Fireman made the false and defamatory statements referenced in paragraphs 27 through 31 above, he was acting within the scope of his employment as Chairman, Chief Executive Officer and President of Reebok and in furtherance of Reebok's business, and in his own behalf.

43. Mr. Fireman's statements regarding Majestic were false and defamatory, Mr. Fireman knew that the statements were false, or had reckless disregard as to the truth of the statements, and uttered the statements for the purpose of causing pecuniary loss to Majestic by improperly interfering with Majestic's business relationship with MLBP.

44. As a direct and proximate result of the false and defamatory statements of Mr. Fireman, Majestic has been damaged and injured in its good name and business reputation.

45. As a direct and proximate result of Mr. Fireman's false and defamatory statements, MLBP has not issued the documentation of the long-term extensions of Majestic's current licenses and the long-term licenses for the eight additional teams. As such, Majestic has suffered actual pecuniary harm.

46. The revenue, profits and business reputation of Majestic have suffered as a direct and proximate result of Mr. Fireman's false and defamatory statements.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment as set forth below.

### Count III

### Intentional Interference with Current and/or Prospective Contractual Relations
### Majestic Athletic, Ltd. v. Reebok International Ltd.

47. The allegations set forth in paragraphs 1 through 46 of Plaintiff's Complaint are incorporated herein by reference as though set forth at length.

48. Mr. Fireman, as Chairman and Chief Executive Officer of Reebok, made the above-referenced false and defamatory statements with the specific intent to improperly interfere with Majestic's business relationship with MLBP and to cause MLBP not to issue the documentation of the long-term extensions of Majestic's current licenses and the long-term licenses for the additional eight teams.

49.  As a direct and proximate result of Mr. Fireman's false and defamatory statements, MLBP has not issued the documentation of the long-term extensions of Majestic's current licenses and the long-term licenses for the eight additional teams.

50.  Mr. Fireman made the foregoing false and defamatory statements without justification or privilege and with actual malice.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment as set forth below.

## Count IV

### Fraud
### Majestic Athletic, Ltd. v. Reebok International Ltd.

51.  The allegations set forth in paragraphs 1 through 50 of Plaintiff's Complaint are incorporated herein by reference as though set forth at length.

52.  As more fully set forth herein, Reebok repeatedly represented to Majestic that it was interested in considering a business relationship with Majestic, including the acquisition of Majestic, and requested certain confidential and proprietary information from Majestic under the false pretense that such information was needed to conduct due diligence or otherwise further the discussions regarding the acquisition or other business relationship.

53.  In reasonable reliance upon Reebok's representations, Majestic provided Reebok with such confidential and proprietary information and continued, in good faith, to engage in discussions with Reebok regarding a potential acquisition or other business relationship.

54.  Upon information and belief, Reebok never intended to consider a business relationship with Majestic, including the acquisition of Majestic, but instead used the

discussions and confidential information to harm Majestic and prevent it from doing business with MLBP.

55. In reasonable reliance upon Reebok's fraudulent misrepresentations, Majestic gave valuable confidential business information to a competitor who had no intention of acquiring Majestic and instead intended to put Majestic out of business.

56. As a direct and proximate result of Majestic's reasonable reliance upon Reebok's fraudulent misrepresentations, Reebok has gained an unfair competitive advantage over Majestic in the sports licensed apparel industry, particularly in connection with the licenses to supply and market Major League Baseball apparel and team uniforms.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment as set forth below.

### Count V

### Misappropriation and Use of Confidential Information
### Majestic Athletic, Ltd. v. Reebok International Ltd.

57. The allegations set forth in paragraphs 1 through 56 of Plaintiff's Complaint are incorporated herein by reference as though set forth at length.

58. The confidential information that Majestic provided to Reebok is valuable to Majestic in its business.

59. Reebok obtained Majestic's confidential information while Reebok occupied a position of trust and confidence with Majestic and, as such, it would be inequitable for Reebok to disclose it to others or for Reebok to use it for itself.

60. As a result, Reebok owes a duty to Majestic not to misappropriate and use the confidential information obtained from Majestic.

61. Upon information and belief, Reebok has used Majestic's confidential information for Reebok's own benefit and to the detriment of Majestic and it is inevitable that Reebok has done so and will continue to do so. In addition, there is a sufficient likelihood or substantial threat of Reebok using Majestic's confidential information for Reebok's own benefit and to the detriment of Majestic in the future.

62. As a result of its breach of duty to Majestic, Reebok has damaged Majestic by using, and by continuing to use, its confidential information to compete against Majestic.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment as set forth below.

### Count VI

### Unfair Competition
### Majestic Athletic,Ltd. v. Reebok International Ltd.

63. The allegations set forth in paragraphs 1 through 62 of Plaintiff's Complaint are incorporated herein by reference as though set forth at length.

64. Mr. Fireman, acting within the scope of his employment and in furtherance of Reebok's interests, made false and defamatory statements about Majestic.

65. As a direct result of the defamatory statements, Majestic has been damaged and injured in its good name and business reputation.

66. As a direct and proximate result of Mr. Fireman's false and defamatory statements, Majestic has suffered actual pecuniary harm.

67. Mr. Fireman's utterance of the above-referenced false and defamatory statements to improperly interfere with Majestic's business relationship with MLBP and to cause MLBP not to issue the documentation of the long-term extensions of Majestic's current licenses and the long-term licenses for the eight additional teams constitutes unfair competition.

68.  Reebok's appropriation, possession and/or use of Majestic's confidential and proprietary information for purposes not related to the formation of a business relationship between Majestic and Reebok or the potential acquisition of Majestic by Reebok constitutes unfair competition.

69.  As a result of the following conduct, Reebok has damaged Majestic by using, and by continuing to use, its confidential information to compete against Majestic.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment against Defendant Reebok International Ltd. as follows:

1.  For an injunction requiring Reebok to return all confidential and proprietary information provided to it by Majestic and requiring Reebok to file an affidavit certifying that it has not retained any copies of such confidential and proprietary information;

2.  For an injunction prohibiting Reebok from using, for any purpose whatsoever, any of the confidential and proprietary information provided to it by Majestic;

3.  For an injunction prohibiting Reebok from competing with Majestic to acquire any MLBP licenses for a period of not less than five (5) years;

4.  For restitution of Reebok's gains, profits and advantages from its unfair competition with Majestic;

5.  For actual damages in an amount in excess of $75,000.00;

6.  For punitive damages;

7.  For costs of suit, including reasonable attorneys' fees; and

8.  For such other relief as this Court may deem proper.

Respectfully submitted,

*[signature]*

Brian P. Downey, Esquire
Alexandra Makosky, Esquire
PEPPER HAMILTON LLP
200 One Keystone Plaza
North Front and Market Streets
Harrisburg, PA  17108-1181
(717) 255-1155

George M. Medved, Esquire
Kim M. Watterson, Esquire
PEPPER HAMILTON LLP
50th Floor
500 Grant Street
Pittsburgh, PA 15219-2502
(412) 454-5000

Dated: May 24, 2002