## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAJESTIC ATHLETIC, LTD.,
a Pennsylvania corporation,

          Plaintiff,

       v .

REEBOK INTERNATIONAL LTD.,
a Massachusetts corporation, and
PAUL FIREMAN, a Massachusetts citizen,
individually and in his capacity as Chairman,
CEO and President of Reebok International Ltd.,

          Defendants.

**FILED**: JUL 3 1 2002

CIVIL ACTION

No. 02-CV-3216

JURY TRIAL DEMANDED

## AMENDED COMPLAINT

Plaintiff, Majestic Athletic, Ltd. ("Majestic"), complains against Defendant,

Reebok International Ltd. ("Reebok") and Paul Fireman ("Mr. Fireman") as follows:

### Parties

1.    Majestic is a Pennsylvania corporation with a principal place of business at

100 Majestic Way, Bangor, Pennsylvania 18013. Majestic is involved in the business of

manufacturing and marketing sports licensed apparel and athletic team uniforms.

2.    Reebok is a Massachusetts corporation with a principal place of business at

1895 J.W. Foster Boulevard, Canton, Massachusetts 02021. Reebok is involved in the business

of manufacturing and marketing sports licensed apparel, footwear and athletic team uniforms.

3.    Mr. Fireman is an adult individual who is domiciled in or around Boston

Massachusetts, and therefore is a citizen of the Commonwealth of Massachusetts. At all times

material and relevant hereto, Mr. Fireman was the Chairman, Chief Executive Officer and President of Reebok.

## Jurisdiction and Venue

4.    The matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

5.    This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c).

## Nature of the Case

7.    Majestic and Reebok are competitors in the sports licensed and athletic team uniform business.  Reebok desired to obtain the valuable licenses that Majestic has with Major League Baseball.  Reebok, in addition, intended to put Majestic out of business, and stated its intention to do so.  Reebok then embarked upon a course of conduct which included engaging in sham negotiations with Majestic, as a result of which the consummation of a deal between Majestic and Major League Baseball for new licenses and the extension of existing licenses was stalled.  When this tactic failed to produce Reebok's desired results, Reebok defamed and disparaged Majestic by accusing Majestic of engaging in bribery.

PHDATA 1029998_1

## Factual Background

8.      For the past 26 years, Majestic has manufactured and marketed sports apparel and team uniforms.  For the past 20 years, Majestic has manufactured and marketed sports apparel and team uniforms for a number of Major League Baseball teams pursuant to both exclusive and non-exclusive licenses from Major League Baseball Properties ("MLBP").

9.      Prior to January 2002, Majestic had been negotiating with MLBP for a long-term extension of its existing licenses, as well as for long-term licenses for the right to manufacture and market the apparel and authentic team uniforms of an additional eight Major League Baseball teams.

10.      Prior to January 2002, Reebok had been soliciting MLBP to acquire licenses to manufacture and market Major League Baseball apparel and team uniforms, including the licenses held by Majestic.

11.      In discussions between Reebok and MLBP on or before January, 2002, MLBP advised Reebok that MLBP was pleased with its long-standing business relationship with Majestic and that it intended to continue that relationship in the future.

12.      MLBP also advised Reebok that if it was interested in manufacturing and marketing Major League Baseball apparel and team uniforms, Reebok might wish to consider a business relationship with Majestic, including the acquisition of Majestic.

13.      In January 2002, Reebok initiated discussions with Majestic regarding a business relationship with, or acquisition of, Majestic.

-3-

14.     Majestic entered into these discussions with Reebok based upon Reebok's representations that led Majestic to believe that Reebok was serious and sincere about the discussions and was acting in good faith.

15.     Simultaneous with the discussions with Reebok, Majestic continued its negotiations with MLBP regarding the long-term extension of its existing licenses and the additional long-term licenses for the right to market the apparel and authentic team uniforms for an additional eight Major League Baseball teams.  At all times material and relevant hereto, Reebok was aware of such negotiations.

16.     On or about March 2002, Reebok specifically advised Majestic that it was not interested in receiving a target acquisition price from Majestic.  In addition, despite repeated requests from Majestic to do so, Reebok never made a proposal to enter into a business relationship with, or to acquire, Majestic.

17.     Upon information and belief, Reebok never intended to enter into any business relationship with Majestic or to acquire Majestic.  To the contrary, the discussions were a sham, devised by Reebok to stall Majestic's negotiations with MLBP for the long-term extension of its existing licenses and additional long term licenses for the additional eight teams.

18.     On or about March 20, 2002, Majestic advised Howard Smith ("Mr. Smith"), Vice President of Licensing for MLBP, that Majestic and Reebok were not close to consummating a business relationship or acquisition, but that Majestic intended to continue such discussions with Reebok.

PHDATA 1029998_1

19.    During the March 20, 2002 discussion with Mr. Smith, Majestic also inquired about the status of Majestic's long-term license extensions and the long-term licenses for the eight additional teams. Mr. Smith advised Majestic that MLBP intended to offer such licenses to Majestic and that he would be discussing the matter with Tim Brosnan ("Mr. Brosnan"), Executive Vice President of Business for MLBP, to obtain the approval to do so.

20.    On or about March 21, 2002, Mr. Smith advised Majestic that he had obtained approval from Mr. Brosnan to proceed with the long-term license extensions and the long-term licenses for the eight additional teams and that a deal sheet would be forwarded to Majestic as soon as Steve Armus, Licensing Director for MLBP, returned from vacation. Mr. Smith also confirmed in the March 21, 2002 conversation that the license extensions and the licenses for the additional eight teams would be on a "long-term" basis.

21.    On the morning of April 2, 2002, Mr. Smith advised Majestic that the deal sheet regarding the license extensions and the licenses for the eight additional teams would be prepared "in the next few days."

22.    On that same day, Mr. Smith contacted Mr. Fireman and advised him that MLBP was going to continue its longstanding relationship with Majestic, and that Majestic would be awarded the long-term license extensions and the long-term licenses for the eight additional teams. Mr. Fireman indicated that he was not pleased with MLBP's decision and the conversation was terminated. If Reebok was serious about an acquisition of Majestic, Mr. Fireman logically would have been pleased with the decision because of Majestic's increased sales that Reebok would enjoy as a result of a business relationship with, or its acquisition of, Majestic.

PHDATA 1029998_1

23.    On that same date, Mr. Fireman subsequently telephoned Mr. Smith and knowingly, falsely and maliciously accused Mr. Smith of accepting bribe payments from Majestic in exchange for the long-term license extensions and the long-term licenses for the additional eight teams. Mr. Fireman also made other threats.

24.    Mr. Fireman made the foregoing statements with full knowledge of their falsity, with the specific intent to cause harm to Majestic's business reputation, to cause harm to Majestic's business relationship with MLBP and to improperly and maliciously interfere with MLBP's award of the long-term license extensions and the long-term licenses for the eight additional teams to Majestic.

25.    The foregoing statements were made by Mr. Fireman without justification and/or privilege and with actual malice.

26.    Mr. Fireman repeated the false and defamatory comments regarding Majestic to Mr. Brosnan; these statements have been repeated to other individuals involved in the sports licensing business, as well as to members of the community in general.

27.    Mr. Fireman's false and defamatory statements have been disseminated throughout the sports licensing industry and have caused substantial damage and injury to the good name and business reputation of Majestic.

28.    As the direct and proximate result of Mr. Fireman's false and defamatory statements regarding Majestic, MLBP did not issue the documentation of the long-term extensions of Majestic's existing licenses and the long-term licenses for the eight additional teams and offered only a one-year extension to Majestic.

-6-

29.    The foregoing activities of Reebok are consistent with its intention to acquire the valuable licenses with MLBP held by Majestic, to cause harm to Majestic's business and business reputation and in furtherance of its plan, as articulated through express statements made to insiders in the industry, that it intends to put Majestic out of business.

## Count I

### Defamation
### Majestic Athletic, Ltd. v. Reebok International Ltd. and
### Paul Fireman, individually and in his capacity as Chairman,
### Chief Executive Officer and President of Reebok International Ltd.

30.    The allegations set forth in paragraphs 1 through 29 of plaintiff's amended complaint are incorporated herein by reference as though set forth at length.

31.    At the time Mr. Fireman made the false and defamatory statements referenced in paragraphs 23 through 27 above, he was acting within the scope of his employment as Chairman, Chief Executive Officer and President of Reebok and in furtherance of Reebok's business, and in his own behalf.

32.    Mr. Fireman's statements regarding Majestic were false and defamatory. Mr. Fireman knew that the statements were false, or had reckless disregard as to the truth of the statements, and uttered the statements for the purpose of depriving Majestic of its good name and reputation and to improperly interfere with Majestic's business relationship with MLBP.

33.    As a direct and proximate result of the false and defamatory statements of Mr. Fireman, Majestic has been damaged and injured in its good name and business reputation.

PHDATA 1029998_1

34.    As a direct and proximate result of Mr. Fireman's false and defamatory statements, MLBP did not issue the documentation of the long-term extensions of Majestic's existing licenses and the long-term licenses for the eight additional teams and offered only a one-year extension to Majestic.

35.    The revenue, profits and business reputation of Majestic have suffered as a direct and proximate result of Mr. Fireman's false and defamatory statements.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment as set forth below.

## Count II

### Commercial Disparagement
### Majestic Athletic, Ltd. v. Reebok International Ltd. and
### Paul Fireman, individually and in his capacity as Chairman,
### Chief Executive Officer and President of Reebok International Ltd.

36.    The allegations set forth in paragraphs 1 through 35 of plaintiff's amended complaint are incorporated herein by reference as though set forth at length.

37.    At the time Mr. Fireman made the false and defamatory statements referenced in paragraphs 23 through 27 above, he was acting within the scope of his employment as Chairman, Chief Executive Officer and President of Reebok and in furtherance of Reebok's business, and in his own behalf.

38.    Mr. Fireman's statements regarding Majestic were false and defamatory, Mr. Fireman knew that the statements were false, or had reckless disregard as to the truth of the

-8-

statements, and uttered the statements for the purpose of causing pecuniary loss to Majestic by improperly interfering with Majestic's business relationship with MLBP.

39.    As a direct and proximate result of the false and defamatory statements of Mr. Fireman, Majestic has been damaged and injured in its good name and business reputation.

40.    As a direct and proximate result of Mr. Fireman's false and defamatory statements, MLBP did not issue the documentation of the long-term extensions of Majestic's existing licenses and the long-term licenses for the eight additional teams and offered only a one-year extension to Majestic.

41.    The revenue, profits and business reputation of Majestic have suffered as a direct and proximate result of Mr. Fireman's false and defamatory statements.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment as set forth below.

### Count III

### Intentional Interference with Current and/or
### Prospective Contractual Relations
### Majestic Athletic, Ltd. v. Reebok International Ltd.

42.    The allegations set forth in paragraphs 1 through 41 of plaintiff's amended complaint are incorporated herein by reference as though set forth at length.

43.    Mr. Fireman, as Chairman and Chief Executive Officer of Reebok, made the above-referenced false and defamatory statements with the specific intent to improperly interfere with Majestic's business relationship with MLBP and to cause MLBP not to issue the

-9-

documentation of the long-term extensions of Majestic's current licenses and the long-term licenses for the additional eight teams.

44.    As a direct and proximate result of Mr. Fireman's false and defamatory statements, MLBP did not issue the documentation of the long-term extensions of Majestic's existing licenses and the long-term licenses for the eight additional teams and offered only a one-year extension to Majestic.

45.    Mr. Fireman made the foregoing false and defamatory statements without justification or privilege and with actual malice.

WHEREFORE, Plaintiff Majestic Athletic, Ltd. prays for judgment as set forth below.

## Count IV

### Unfair Competition
### Majestic Athletic, Ltd. v. Reebok International Ltd.

46.    The allegations set forth in paragraphs 1 through 45 of plaintiff's amended complaint are incorporated herein by reference as though set forth at length.

47.    Mr. Fireman, acting within the scope of his employment and in furtherance of Reebok's interests, made false and defamatory statements about Majestic.

48.    As a direct result of the defamatory statements, Majestic has been damaged and injured in its good name and business reputation.

PHDATA 1029998_1

49.    As a direct and proximate result of Mr. Fireman's false and defamatory statements, Majestic has suffered actual pecuniary harm.

50.    Mr. Fireman's utterance of the above-referenced false and defamatory statements to improperly interfere with Majestic's business relationship with MLBP and to cause MLBP not to issue the documentation of the long-term extensions of Majestic's current licenses and the long-term licenses for the eight additional teams constitutes unfair competition.

WHEREFORE, plaintiff Majestic Athletic, Ltd. prays for judgment against defendant Reebok International Ltd. as follows:

1.    For an injunction prohibiting Reebok from competing with Majestic to acquire any MLBP licenses for a period of not less than five (5) years;

2.    For restitution of Reebok's gains, profits and advantages from its unfair competition with Majestic;

3.    For actual damages in an amount in excess of $75,000.00;

4.    For punitive damages;

5.    For costs of suit, including reasonable attorneys' fees; and

6.      For such other relief as this Court may deem proper.

Respectfully submitted,

David Smith (Attorney I.D. 21480)

Attorney for Plaintiff,
  Majestic Athletic, Ltd.

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2000
(215) 751-2205 (fax)

Of Counsel.

Dated: July 31, 2002.

-12-

## CERTIFICATE OF SERVICE

I, Dionna K. Litvin, hereby certify that a copy of the foregoing Amended

Complaint was served upon the following on July 31, 2002.


By Hand Delivery:

Richard L. Scheff, Esquire
Montgomery McCracken Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, Pennsylvania 19109

By First-Class Mail:

Robert G. Jones, Esq.
Ropes & Gray
One International Place
Boston, MA 02110


Dionna K. Litvin


PHDATA 1029998_1